HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| K.M., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REGENCE BLUE SHIELD, et al.<br><br>Defendants. | CASE NO. C13-1214RAJ<br><br>ORDER |

# I. INTRODUCTION

This matter comes before the court on Plaintiffs', K.M., B.S. and Disability Rights of Washington ("DRW"), unopposed motions for certification of settlement subclasses and for preliminary approval of settlement agreement. Dkt. ## 74, 73. After extensive negotiations, the parties have reached an agreement that appears to fundamentally change the insurance landscape for all of defendants' Washington insureds with developmental disabilities and autism. The court applauds the parties' efforts.

For the reasons stated below, the court GRANTS the motion for certification and DENIES the motion for preliminary approval.[1]

## II. BACKGROUND

This case was filed on July 11, 2013, on behalf of K.M. and B.S., children with autism/ASD, and on behalf of similarly situated individuals. Dkt.# 1. Plaintiff Disability Rights Washington (DRW), the designated protection and advocacy organization in Washington State, was added as a plaintiff in an amended Complaint filed on July 18, 2013. Dkt.# 13. DRW, B.S. and K.M. alleged that Regence's exclusion and limitation of coverage of neurodevelopmental ("NDT") and Applied Behavior Analysis ("ABA") therapies to treat conditions listed in the Diagnostic and Statistical Manual (DSM) violated the Washington State Mental Health Parity Act and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (collectively the "Parity Acts").

Specifically, plaintiffs challenged Regence's uniform policy of excluding and limiting NDT and ABA therapies to treat DSM-defined conditions, regardless of medical necessity, as both violating the Parity Acts and breaching Regence's insurance contracts. *See* Dkt.# 13, ¶¶11-18. The proposed Settlement Agreement addresses this claim directing, and provides prospective relief to the plaintiffs and putative class members by eliminating Regence's exclusions and treatment limits when those therapies are provided to treat DSM mental health conditions. It also affirmatively requires Regence to prospectively cover NDT and ABA therapies when medically necessary without caps or visit limitations. And, with respect to prospective coverage of ABA therapy, Regence must now follow a "best practice" model, developed in conjunction with the University

---

[1] No party has requested oral argument, and the court finds oral argument unnecessary at this stage.

of Washington and Children's Hospital, for the delivery of effective ABA therapy to insureds. *See Appendix A* to the Settlement Agreement.

In addition to this prospective relief, the Settlement Agreement provides a $6,000,000 settlement fund to address claims for reimbursement for previously uncovered NDT and ABA services.

The Court previously certified a *prospective* NDT subclass under Rule 23(b)(1) and (b)(2). *See* Dkt.# 51, p. 25. Plaintiffs now move for certification of two additional subclasses. The first class, the "K.M. NDT Settlement Subclass," is composed of Regence ERISA insureds with DSM conditions who received, require, or are expected to require NDT therapies (speech, occupational and physical therapies) to treat their mental health conditions. The second class, the "K.M. ABA Settlement Subclass," is defined as a class of Regence ERISA insureds with autism spectrum disorders (ASD) who received, require, or are expected to require ABA therapy to treat their ASD.

### III. ANALYSIS

**A. Motion for Certification of K.M. NDT and K.M. ABA Subclasses**

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for purposes of settlement, the court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Plaintiff proposes that the court certify NDT and ABA subclasses defined as follows:

<u>K.M. NDT Settlement Subclass</u>.  All individuals who:

(1) have been, are, or will be beneficiaries under an ERISA-governed "health plan" as that term is defined by RCW 48.43.005(26), that was or will be delivered, issued for delivery, or renewed on or after January 1, 2006 in Washington state or to Washington state residents by Regence; and

(2) have received, require, or are expected to require neurodevelopmental therapy for the treatment of a condition listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM) other than: (a) substance related disorders, (b) life transition problems, currently referred to as "V" codes, and diagnostic codes 302 through 302.9 as found in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, published by the American Psychiatric Association or (c) where the service received, required, or expected to be required is classified as skilled nursing facility services, home health care, residential treatment, custodial care or non-medically necessary court-ordered treatment.

Where "*Regence*" means: (a) Regence BlueShield and Cambia Health Solutions, Inc., (b) any parent, affiliate or subsidiary of Regence BlueShield; and (c) predecessors or successors in interest of any of the foregoing. "*Regence*" includes Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, and Regence BlueShield of Idaho only with respect to policies issued in Washington State.

<u>K.M. ABA Class</u>.  All individuals who:

(1) have been, are, or will be beneficiaries under an ERISA-governed "health plan" as that term is defined by RCW 48.43.005(26), that was or will be delivered, issued for delivery, or renewed on or after January 1, 2006, in Washington state or to Washington state residents by Regence; and

(2) have received, require, or are expected to require, Applied Behavioral Intervention Services for the treatment of autism or autism spectrum disorder.

Where "*Regence*" means: (a) Regence BlueShield and Cambia Health Solutions, Inc., (b) any parent, affiliate or subsidiary of Regence BlueShield and; (c) successors in interest of any of the foregoing. "*Regence*" includes Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, and Regence BlueShield of Idaho only with respect to policies issued to persons residing in Washington State.

Where "*Autism*" means a diagnosis of an Autism Spectrum Disorder of 299.0, 299.10, 299.80 under the Diagnostic and Statistical Manual of

Mental Disorders published by the American Psychiatric Association (DSM IV-TR or DSM V) (or any subsequent revisions thereto).

Dkt. # 74 at 3-4.

The court first considers whether the classes plaintiffs hope to certify satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b). After that, the court will address whether the settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.

1. The Four Pre-requisites of Rule 23(a): Numerosity, Commonality, Adequacy, and Typicality

The two classes plaintiffs hope to certify satisfy the numerosity and commonality requirements of Rule 23(a). There are thousands of Regence ERISA insureds who needed, need, or will need NDT to treat a DSM condition during the class period. *See* Dkt.# 9-6 at 41-42 (*Exh. S* to Hamburger Decl., Fox Decl., ¶9); *see also* Dkt.# 51. There are also thousands of current Regence ERISA insureds diagnosed with ASD who needed, need, or will need ABA therapy. Spoonemore Decl., *Exh. C, ¶*9 Dkt. # 9-6, p. 223 (*Exh. S* to Hamburger Decl.). There is no question that joinder of that many individual plaintiffs would be impracticable. Fed. R. Civ. P. 23(a)(1). The court agrees that there are at least two common questions: With respect to the NDT subclass, do Regence's neurodevelopmental therapy age exclusions and limitations violate the Parity Acts because such clauses exclude medically necessary therapy to treat DSM mental health conditions? and (2) With respect to the ABA subclass, does Regence's outright exclusion of ABA therapy to treat ASD, even when medically necessary, violate the Parity Acts? Fed. R. Civ. P. 23(a)(2); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (commonality only requires a single significant question of law or fact).

While the numerosity and commonality requirements focus on the class, the typicality and adequacy requirements focus on the class representatives. The

representatives must have "claims or defenses . . . [that] are typical of the claims or defenses of the class," and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

Here, the plaintiffs base their claims on the same legal theory as the classes: that the Parity Acts require Regence to provide coverage for medically necessary services, whether NDT or ABA, to treat mental health conditions listed in the DSM, such as autism. K.M.'s claims are typical of class members' claims where he allegedly was denied coverage for medically necessary NDT and ABA therapy to treat his mental health conditions. Dkt. # 8, ¶¶ 5-14, 12-16; s*ee Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical."). B.S.'s claims are also typical of class members' claims where he allegedly was denied coverage for NDT therapy and requires ABA therapy. Dkt. # 6-2, pp. 5-7; Dkt. # 6, ¶ 13. Additionally, as this court has already found, DRW has associational standing and may serve as a class representative. Dkt. # 51, p. 10.

Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy. Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). The court has no difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed subclasses. Additionally, the claims and interests of plaintiffs are not in conflict with any interests of the proposed subclasses. Dkt. # 6, ¶ 14; Dkt. # 8 ¶ 18.

2. The Requirements of Rule 23(b)(3)

Rule 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When considering a settlement class, the court need not worry about whether the action could be manageably presented at trial.

*Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997). The predominance requirement focuses on the relationship between the common and individual issues, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013).

Plaintiffs have demonstrated that the predominance requirement is satisfied here where each class member seeks a determination regarding whether Regence's exclusion and limitation of NDT coverage violated the Parity Acts, breached their insurance contracts and the fiduciary duty owed by Regence, and, if so, whether those violations entitle them to damages.

The superiority of a class action is also clear where thousands of class members will be eligible for a streamlined, non-judicial means of obtaining back benefits that were previously excluded or limited. Class members will be able to obtain these benefits without hiring additional attorneys, filing new lawsuits or even exhausting their administrative appeals, and those who do not want to participate may simply "opt out" of the process and pursue their claims independently.

Accordingly, the court finds that the proposed subclasses should be certified under Rule 23(b)(3).

**B. Motion for Preliminary Approval of the Settlement Agreement**

Plaintiffs have also submitted an unopposed motion for preliminary approval of settlement agreement. Dkt. # 73. If approved, the settlement agreement would resolve three cases: the instant action, *K.M. v. Regence BlueShield*, Case No. 13-1214-RAJ, another matter pending before this court, *J.T., S.A. v. Regence BlueShield*, Case No. 12-90-RAJ, and a third action which is pending in state court, *O.S.T. v. Regence BlueShield*, Case No. 11-2-34187-9 SEA, King County Superior Court (J. Erlick).

Although this global agreement appears to be fair and reasonable, as the court previously stated in *R.H. v. Premera*, Case No. 12-97-RAJ, the court will not issue a

ruling that impacts cases which are not pending before it. The Ninth Circuit has repeatedly stated that the decision to approve or reject a class action settlement is committed to the sound discretion of the trial judge "because he is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, the court has not been engaged in the state court proceedings and has not observed the litigants and their strategies, positions and proof in those matters. Additionally, plaintiffs have provided the court with no authority that suggests the court would have jurisdiction to bind parties to the agreement who are not parties to the actions pending before this court.

Accordingly, the court directs plaintiffs' counsel to submit a revised motion for preliminary approval that clearly identifies the benefits obtained for the class members in this action and for the sole plaintiff remaining in *J.T., S.A. v. Regence BlueShield*, Case No. 12-90-RAJ. Plaintiffs' counsel should identify the population of the K.M. NDT Subclass and the K.M. ABA Subclass and the portion of the common fund allocated to those subclasses. Additionally, although the settlement agreement merely allows plaintiffs' counsel to apply for fees and costs at a later date, they should nevertheless preliminarily advise the court what percentage of the common fund will be sought based upon the work performed in connection with the cases before this court. In short, plaintiffs must separate the relief sought from this court from the relief sought in state court.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS plaintiffs' unopposed motion to certify the K.M. NDT and K.M. ABA subclasses (Dkt. # 74), and DENIES the motion for preliminary approval of settlement agreement (Dkt. # 73). Plaintiffs may file a renewed motion that addresses the concerns raised by the court no later than February 27, 2015.

To the extent that the Settlement Agreement or Notice is revised, plaintiffs shall submit a redline version in addition to the revised version.

Dated this 9th day of February, 2015.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge